UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KIMBERLY WILLIAMS**  Case No.
  Hon.
 Plaintiff,

v.

**TRINITY HEALTH CORPORATION**

 Defendant.
_____

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com
_____

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Complaint.

Plaintiff Kimberly Williams, by and through her attorneys, Croson, Taub, & Michaels, PLLC, hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for discrimination on the basis of race and retaliation for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, *et seq.*

2. Plaintiff, Kimberly Williams, is an individual residing in Henrico, Virginia in Henrico County. Plaintiff is a citizen of Virginia.

3. Defendant, Trinity Health Corporation, is a foreign nonprofit corporation with a registered business agent in Plymouth, Michigan in Wayne County. On information and belief, Defendant is incorporated in Indiana and headquartered in Michigan, making Defendant a citizen of Indiana and Michigan.

4. Plaintiff is a former employee of Defendant as defined by Title VII and ELCRA.

5. At all times relevant hereto, Plaintiff performed work for Defendant in the Eastern District of Michigan at Defendant's location in Livonia, Michigan in Wayne County.

6. The amount in controversy exceeds $75,000, exclusive of costs, interests, and attorney fees.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

8. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

9. Alternatively, this Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. The pendant claims are part of

the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

10. Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Eastern District of Michigan, Plaintiff was employed by Defendant within the Eastern District of Michigan, and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

11. Defendant is an employer and Plaintiff is an employee within the meaning of Title VII and ELCRA.

12. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her race and retaliation for opposing discrimination.

13. Plaintiff's charge was filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

14. Plaintiff received her notice of right to sue from the EEOC prior to bringing the instant action and has filed suit within 90 days of its receipt.

## STATEMENT OF FACTS

15. Plaintiff is African American.

16. Plaintiff began working for Trinity in or about November 2019, ultimately obtaining the title of General Manager for Environmental Services.

17. At all times relevant hereto, Plaintiff performed her job diligently and competently and was well-qualified for the positions she held.

18. Plaintiff's employment was without issue until an incident that occurred in or about September 2023.

19. Around that time, two Team Leaders that worked under Plaintiff got in an altercation.

20. Plaintiff spoke with one of the Team Leaders who told Plaintiff that they had worked it out and everything was fine.

21. However, shortly thereafter, that same Team Leader complained to human resources that she only told Plaintiff that everything was fine because she was intimidated by Plaintiff.

22. Plaintiff then had a meeting with the employee and her then-manager, Rufus Pool. Plaintiff got upset during the meeting, as she did not appreciate the employee lying to her, and Plaintiff felt like she had done nothing to intimidate the employee.

23. As such, Plaintiff attempted to leave the meeting to calm down. But when Plaintiff walked out, Mr. Pool tried to get her to return, resulting in further unnecessary misunderstanding and escalation of the situation.

24. Following this meeting, Plaintiff took an unrelated leave of absence for approximately a month for medical-related reasons.

25. Upon her return, Plaintiff was made to participate in an investigation regarding the September meeting.

26. On or about October 30, 2023, Plaintiff received a Final Written Warning for alleged unprofessional conduct.

27. Nonetheless, Plaintiff received a promotion even after receiving this warning, and there were no further incidents for nearly a year.

28. On or about September 4, 2024, Plaintiff attended a morning safety huddle even though she was not supposed to be there that day.

29. Plaintiff had a doctor's appointment that morning, but she got out earlier than expected, so Plaintiff agreed to cover for another Director who was unable to attend the meeting.

30. When Plaintiff arrived at the meeting, her subordinates—who were covering for Plaintiff due to her expected absence—were obviously surprised to see Plaintiff there. Additionally, the Director who Plaintiff was covering for had also asked another manager to cover for him as well. Given the significant confusion, Plaintiff spoke with those individuals to determine who would talk during the meeting.

31. While trying to have that conversation, another Director, Maryanne Duchene (Caucasian), interrupted and said that she needed to talk to Plaintiff about another topic. Plaintiff replied that she was in the middle of a conversation and that

5

it was not a good time. Ms. Duchene then responded by throwing her hands in the air, huffing and puffing, and saying with a nasty tone, "I'll just send you an email."

32. Ms. Duchene had engaged in this type of behavior three to four times with Plaintiff previously, which Plaintiff found unprofessional.

33. As such, Plaintiff stated that, as with her prior final written warning, when she engaged in similar behavior, management had called her "angry." Ms. Duchene then said, "I don't think you're an angry black girl."

34. Plaintiff was deeply offended by Ms. Duchene's use of an odious stereotype and became upset.

35. Plaintiff directly told Ms. Duchene that her statement was not okay and asked to speak with Ms. Duchene after the meeting. Nonetheless, another Director stated that the meeting was not the space for that conversation and told Ms. Duchene to leave the room.

36. After Ms. Duchene left the room, Plaintiff told others in the room what had happened and expressed her frustrations with racism that she dealt with at Defendant.

37. She also told those present that this was not the first time that Ms. Duchene had acted this way towards her.

38. Ms. Williams stated that she wanted to go home in an attempt to deescalate the situation, but the COO wanted to continue the conversation.

39. After being made to stay and while stating her opposition to race discrimination in the workplace, Ms. Williams became upset and admits to hitting the table at one point in the conversation.

40. But doing so was not abnormal for similarly-situated employees. Plaintiff herself had been yelled at by a Caucasian Spiritual Care VP in the same boardroom without issue. It was common for other Caucasian managers to blow up in meetings or in offices, and many Caucasian managers would use curse words and get heated in meetings without any discipline being issued.

41. Yet, on or about September 18, 2024, Defendant terminated Plaintiff's employment, claiming that Plaintiff's behavior on September 4th was unprofessional.

42. Notably, on information and belief, Ms. Duchene received no discipline for her part in the incident.

43. In reality, Plaintiff was terminated because of her race and in retaliation for her opposition to discriminatory treatment.

44. Furthermore, similarly-situated Caucasian employees engaged in the same or similar behavior as Plaintiff, but they were not placed on a final written warning or terminated.

45. On information and belief, Defendant replaced Plaintiff with a Caucasian employee.

## COUNT I
## EMPLOYMENT DISCRIMINATION IN VIOLATION OF TITLE VII

46. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

47. At all times relevant hereto, Plaintiff was an employee, and Defendant was her employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b), (f).

48. At all times relevant hereto, Defendant engaged in interstate commerce and employed more than 15 employees and is thus subject to the requirements of Title VII.

49. Plaintiff is a member of a protected class because of her race (African American).

50. Defendant violated Plaintiff's rights under Title VII, 42 U.S.C. § 2000e-2, *et seq.*

51. Defendant by its agents, representatives, and/or employees, discriminated against Plaintiff because of her race.

52. Defendant was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

53. Defendant subjected Plaintiff to adverse employment actions, including, but not limited to, the termination of her employment.

54. Defendant subjected Plaintiff to disparate treatment because of her race, said acts being made unlawful by Title VII, 42 U.S.C. § 2000e-2, *et seq.* Such acts

8

include but are not limited to the termination of Plaintiff's employment.

55. Defendant's actions in violation of Title VII were willful.

56. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race.

57. But for Plaintiff's race, she would not have been terminated by Defendant.

58. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

59. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## RACE DISCRIMINATION IN CONTRACTING
## 42 U.S.C. § 1981

60. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

61. Plaintiff is a member of a protected group based on her race.

62. By the conduct described above, Defendant intentionally deprived Plaintiff, who is African American, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual relations with Defendant, in violation of 42 U.S.C. § 1981.

63. Defendant's actions in violation of § 1981 were willful.

64. Plaintiff's race was the motivating and/or but for cause of Defendant's actions in violation of § 1981.

65. Defendant's course of conduct was done with reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

66. As a direct and proximate result of Defendant's violation of § 1981, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

67. As a further direct and proximate result of Defendant's violation of § 1981, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
## EMPLOYMENT DISCRIMINATION IN VIOLATION OF ELCRA
## MCL § 37.2202(1)(a)

68. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

69. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of ELCRA, MCL § 37.2201.

70. Plaintiff is a member of a protected class because of her race (African American).

71. Plaintiff was subjected to adverse employment actions, including giving Plaintiff a final written warning and the termination of her employment.

72. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race.

73. But for Plaintiff's race, she would not have been given a final written warning or terminated.

74. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

75. As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work, and

will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## RETALIATION IN VIOLATION OF TITLE VII

76. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

77. At all times relevant hereto, Plaintiff was an employee, and Defendant was her employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b), (f).

78. At all times relevant hereto, Defendant engaged in interstate commerce and employed more than 15 employees and is thus subject to the requirements of Title VII.

79. Plaintiff engaged in protected activity under Title VII, 42 U.S.C. § 2000e-3(a) by opposing discrimination against her on the basis of her race, including by reporting such discrimination to Defendant's managers.

80. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, terminating Plaintiff's employment.

81. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

82. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

83. Defendant's actions in violation of Title VII were willful.

84. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

85. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

86. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT V
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

87. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

88. By the conduct described above, Defendant intentionally retaliated against Plaintiff because of her opposition to race discrimination which violated her right to creation, performance, enjoyment, and all benefits and privileges, of a contractual employment relationship with Defendant, regardless of her race, in

13

violation of 42 U.S.C. §1981. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

89. Plaintiff engaged in protected activity under 42 U.S.C. § 1981 by opposing discrimination against her on the basis of his race, including by reporting such discrimination to Defendant's managers.

90. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, terminating Plaintiff's employment.

91. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

92. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

93. Defendant's course of conduct was done with reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

94. As a direct and proximate result of Defendant's violation of § 1981, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

95. As a further direct and proximate result of Defendant's violation of § 1981, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT VI
## RETALIATION IN VIOLATION OF ELCRA

96. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

97. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of ELCRA, MCL § 37.2201.

98. Plaintiff engaged in protected activity under ELCRA, MCL § 37.2701, by opposing discrimination against her on the basis of her race, including by reporting such discrimination to Defendant's managers.

99. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, terminating Plaintiff's employment.

100. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

101. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

102. Defendant's actions in violation of ELCRA were willful.

103. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

104. As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, **KIMBERLY WILLIAMS**, requests that this Honorable Court grant the following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of Title VII, 42 U.S.C. § 1981, and ELCRA;

b. Compensatory damages for monetary and non-monetary loss in whatever amount she is found to be entitled;

c. Exemplary damages in whatever amount she is found to be entitled;

d. Punitive damages in whatever amount she is found to be entitled;

e. A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

f.  An order of this Court reinstating Plaintiff to the position she would have if there had been no wrongdoing by Defendant;

g.  An injunction of this Court prohibiting any further acts of discrimination by Defendant;

h.  An award of interest, costs and reasonable attorney fees; and

i.  Whatever other equitable relief this Court finds appropriate.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: July 14, 2025

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KIMBERLY WILLIAMS**　　　　　　　　　　　Case No.
　　　　　　　　　　　　　　　　　　　　　　Hon.
　　　　Plaintiff,

v.

**TRINITY HEALTH CORPORATION**

　　　　Defendant.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## **DEMAND FOR TRIAL BY JURY**

**NOW COMES** Plaintiff, **KIMBERLY WILLIAMS**, by and through her attorneys, **CROSON, TAUB, & MICHAELS, PLLC**, and hereby demands a trial by jury, for all issues so triable.

                                        Respectfully Submitted,
                                        CROSON, TAUB, & MICHAELS, PLLC

                                        /s/ Adam M. Taub_____
                                        Adam M. Taub (P78334)
                                        Attorney for Plaintiff
                                        455 E. Eisenhower Pkwy, Ste. 75
                                        Ann Arbor, MI 48108
                                        (734) 519-0872
                                        ataub@ctmlawyers.com

Dated: July 14, 2025